IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANK OF AMERICA, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 5651 |
| | ) |
| MARY ANN KENNY SMITH, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Bank of America, N.A.'s (BOA) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

## BACKGROUND

BOA contends that in August 2005, LaSalle Bank, National Association (LaSalle) loaned Defendant Mary Ann Kenny Smith (Smith) $3.5 million (Smith Loan) in connection with a development of a hotel in Chicago. Smith allegedly signed a promissory note (Smith Note) in connection with the Smith Loan. After

several extensions of the maturity date on the Smith Note, the maturity date was allegedly set for February 28, 2011. After that deadline passed, Smith allegedly failed to pay the amounts owed on the Smith Note. BOA claims that it is the successor in interest of LaSalle and has included in its complaint a breach of contract claim seeking to recover the amounts owed by Smith on the Smith Note, which BOA contends totals $3,630,973.77. BOA now moves for summary judgment on its claim.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a

whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

BOA argues that it is not disputed by Smith that she defaulted on the Smith Loan and owes money to BOA under the Smith Note. BOA also contends that there are no genuinely disputed facts that could provide Smith with a meritorious defense in this case or that show that Smith owes less money than asserted by BOA in this case.

I. Liability of Smith Under the Smith Note

BOA argues that there are no genuinely disputed facts regarding whether Smith defaulted on the Smith Loan or whether Smith owes BOA monies under the Smith Note. Smith admits that BOA executed a loan for $3.5 million in coordination with the Smith Note. (R SF Par. 5). Smith claims that she never personally received or used the funds herself. (R SF Par. 6). However, Smith concedes that she personally signed the signature page on the Smith Note, and the language in the Smith Note indicates that the Smith Loan was being made to Smith. (R SF Par. 6).

3

Smith contends that it is somehow unfair to hold her liable because the funds from the Smith Loan were used by her brother, Gerard Kenny (Kenny). (Ans. SJ 1). However, such facts, even if true, do not alter the undisputed fact that the Smith Loan was made to Smith, not Kenny. What Smith chose to do with the funds from the Smith Loan after she affixed her signature to the Smith Note does not alter the parties to the Smith Note or Smith's contractual obligation under the Smith Note. It is undisputed that BOA executed a separate note and a separate loan with Kenny (Kenny Note) and separately loaned $3.5 million to Kenny. (R SF Par. 8). Thus, BOA loaned a total of $7 million to Smith and Kenny for the hotel project under two separate loans and two separate notes. Smith has not produced any evidence showing that Kenny affixed any signature to the Smith Note or evidence showing that Kenny has any obligation under the Smith Note. Finally, it is undisputed that upon the maturity date of the Smith Note, Smith failed to make the payment owed by her personally under the terms of the Smith Note. (R SF Par. 29). Therefore, based on the undisputed facts, Smith is liable as a matter of law for breaching her obligations to BOA under the Smith Note.

## II. Defenses to Liability Asserted by Smith

BOA contends that Smith has not pointed to sufficient evidence relating to her

defenses to liability to defeat BOA's motion for summary judgment. In her answer to the complaint, Smith asserts as affirmative defenses: (1) setoff, (2) failure to mitigate, and (3) unclean hands. As to the failure to mitigate and set-off defenses, they relate to the amount of damages owed rather than to underlying liability on the part of Smith. *See Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.*, 758 F.Supp.2d 596, 602-03 (N.D. Ill. 2010)(explaining that "'failure to mitigate is not a defense to liability; it concerns only the amount of recoverable damages, not the right to recover damages'")(quoting *Ner Tamid Congregation of North Town v. Krivoruchko,* 638 F.Supp.2d 913 (N.D. Ill. 2009)). In regard to the unclean hands defense, the defense is an equitable defense under which "equitable relief will be refused if it would give the plaintiff a wrongful gain." *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002). In the instant action, BOA is not seeking to obtain equitable relief in its complaint or in its motion for summary judgment. Thus, the defense of unclean hands is not applicable in this instance. Finally, it is undisputed that in connection with an agreement between Smith and BOA to extend the maturity date of the Smith Note, Smith signed a release (Release). (R SF Par. 15-16, 20, 24-25). The Release provided that she released BOA from any defenses or claims relating to the prior versions of the Smith Note that existed prior to February 28, 2010. (SF Par. 15-16, 20, 24-25); (P Ex. 9). The release further

expansively covers defenses "which relate to or may relate in any manner whatsoever to any facts, known or unknown, in existence on or at any time prior to" February 28, 2010. (RSF Par. 15-16, 20, 24-25). Based on the above, Smith has failed to point to sufficient evidence to show that her defenses to liability are sufficiently meritorious such that a reasonable trier of fact could find that Smith is not liable under the Smith Note.

III. Amounts Owed by Smith

BOA also argues that there are not disputed material facts in regard to the amount owed by Smith under the Smith Note.

A. Set-Off and Failure to Mitigate Defenses - Payments by Kenny

Smith argues that her debt under the Smith Note should be setoff by proceeds paid by Kenny to BOA, which should have been used by BOA to mitigate damages sustained by BOA due to Smith's default on the Smith Note. It is undisputed that arbitration proceedings were commenced by the Trust of Gerard M. Kenny (Trust) against Kenny Industries, and that in March 2009, an arbitration award (Arbitration Award) was entered requiring Kenny to pay $6.9 million to the Trust. (R SF Par. 36-38). It is also undisputed that in July 2011, the Trust delivered to BOA

$3,136,309.18 as a result of the Arbitration Award and later delivered to BOA an additional $384,006.02 in November 2011. (R SF Par. 41-42).

Smith contends that the Smith Note provides that "Liquidity Event Proceeds received or deemed received by the Bank under the Gerard M. Kenny Note shall be applied, on a 50-50 basis, to the obligations owing under the Note and under the Gerard M. Kenny Note. . . ." (P Ex. 12 Sec. 6(a)); (R SF Par. 33). However, the provision referenced by Smith is only applicable under the terms of the Smith Note "[s]o long as no Event of Default [has] occurred. . . ." (R SF Par. 33). It is undisputed that Smith's failure to pay the monies owed in February 2011 was a Default Event and that BOA did not receive any funds from Kenny until later, in July 2011. (R SF Par. 29, 31, 41). Thus, the provision relating to the division of payments from Kenny between the Smith Note and the Kenny Note is not applicable.

It is further undisputed that as part of an agreement to extend the maturity date of the Kenny Note for Kenny's benefit, BOA and the Trust entered into a Security Agreement (Security Agreement) that provided BOA a security interest in Kenny's rights under a Share Purchase Agreement. (R SF Par. 23). Smith argues that the proceeds paid by Kenny pursuant to the Arbitration Award were collateral under the Smith Note and that, pursuant to the Security Agreement, BOA was mandated to use the proceeds to reduce the debt owed on the Smith Note. However, the undisputed

7

language of the Security Agreement referenced by Smith expressly permitted BOA to credit the proceeds from Kenny towards the debt owed on the Kenny Note. The Security Agreement provides that in the event of a default, collateral shall be applied by BOA "in such order of application as the Bank may from time to time elect. . . ." (P Ex. 8 Sec. 7); (R SF Par. 31). The Smith Note and the Kenny Note also specifically state that the remedies in regard to collateral or security "may be pursued singularly, successively or together, at the sole discretion of" BOA. (P Ex. 1 Sec. 16); (P Ex. 12 Sec. 16). Thus, BOA was free to credit the proceeds from Kenny toward the debt owed on the Kenny Note and proceed in legal action against Smith to recover the debt owed on the Smith Note if BOA chose to do so.

Smith also contends that BOA did not bring a legal action against Kenny and chose not to name him as a defendant in this case. (Ans. SJ 18 n.11). However, in declining to sue Kenny, BOA was acting within the clear terms of the agreement Smith entered into with BOA. Thus, the undisputed facts show that BOA did not breach any agreement with Smith in deciding not to apply the proceeds provided by Kenny towards the debt owed on the Smith Note. It is also undisputed that Smith's obligation was not limited by Kenny's inability to honor his obligations on the Kenny Note. (P Ex. 12). Under the undisputed facts, BOA had the right to credit the payments from Kenny towards the debt owed on the Kenny Note. In addition, to

8

the extent that Smith argues that BOA could have mitigated the damages incurred due to the default on the Smith Note by crediting the payments from Kenny, BOA correctly points out that such action would have exposed BOA to a potential lawsuit from Kenny and would have increased the risk that Kenny would not make any further payments towards the debt owed on the Kenny Note. BOA was not obligated under the law to create such potential risks. *See Ner Tamid*, 638 F.Supp.2d at 920 (explaining that the duty to mitigate damages does not require a lender to undertake "undue risk or burden"). Thus, to the extent that the set-off defense and failure to mitigate defense are premised on any payment from Kenny not being credited towards the debt owed on the Smith Note, such defenses cannot succeed based on the undisputed facts in this case.

B. Set-Off and Failure to Mitigate Defenses - Additional Bases

Smith also presents additional bases for her set-off and failure to mitigate defense. Smith argues that any proceeds that might have been collected by Kenny should be set-off against Smith's debt on the Smith Note. In her answer to the complaint, Smith states that in addition to sums received by BOA from Kenny, Smith "is entitled to set off any sums that might have been collected by [Kenny] during the term of the Second Amended Note. . . ." (Ans. Compl. Add Def. Par. 19). In the

9

first instance, Smith fails to clearly identify the "sums" that she is referring to. Secondly, such undefined sums cannot support a set-off defense since they constitute unliquidated debt and would require the court to estimate the amounts at issue. *See Bank of Chicago-Garfield Ridge v. Park Nat. Bank*, 606 N.E.2d 72, 76 (Ill. App. Ct. 1992)(explaining that the set-off defense it is only applicable "where the debts are mutual, mature, and of such a certain and ascertainable character as to be capable of being applied in compensation of each other without the intervention of the court to estimate them").

In regard to the failure to mitigate defense, Smith argues that BOA should have mitigated damages by seeking additional proceeds from Kenny prior to the default by Kenny. However, BOA had no duty to mitigate damages at all since Smith unconditionally promised to repay the amounts owed on the Smith Note. *MB Financial Bank, N.A. v. Planet Airways, Inc.*, 2005 WL 1189597, at *3 (N.D. Ill. 2005)(stating that "under Illinois law, a lender does not have a duty to mitigate "where the party has unconditionally guaranteed payment on the note"). Further, even if BOA had a duty to mitigate damages, such duty would not have arisen prior to the date that BOA sustained legal injuries through the defaults by Kenny and Smith. *Ner Tamid,* 638 F.Supp.2d at 920-21 (indicating that there is no obligation to mitigate damages prior to a breach of a contractual obligation to pay). Thus, based

on the undisputed facts, Smith has not pointed to any basis to prevail on the set-off or failure to mitigate defenses.

### C. Covenant of Good Faith and Fair Dealing

Smith also argues that BOA was obligated to credit the proceeds from Kenny under the covenant of good faith and fair dealing. BOA correctly points out that the covenant of good faith and fair dealing is applied when interpreting ambiguous contractual terms. It does not provide a party independently with a contractual obligation or remedy. *See In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006)(stating that the covenant of good faith and fair dealing "is a rule of construction, not a stand-alone obligation"); *see also Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990)(explaining that "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties," and that "[w]hen the contract is silent, principles of good faith . . . fill the gap"). Further, even if Smith could show that the covenant is applicable in this case, Smith has failed to point to sufficient evidence to show that BOA failed to act in good faith in regard to the Smith Note. Although Smith accuses Kenny of being the one

11

responsible for the loss of the funds, it was Smith who chose to sign the Smith Note. In loaning the $3.5 million to Smith, LaSalle was relying on Smith's promise to repay the debt. Smith admits that LaSalle would not have agreed to lend Kenny the whole $7 million that made up the two separate loans. (R SF Par. 9). There is nothing inequitable in holding Smith to the agreement she entered into with BOA. The undisputed facts show that BOA used the proceeds from Kenny in a manner specifically authorized under the terms of the Smith Note and the Kenny Note. If Smith believes that Kenny acted unlawfully in his use of the funds given to him by Smith, Smith's remedy would lie with Kenny, not with BOA. Smith, in fact, acknowledges that she is currently pursuing a legal action against Kenny in state court. (Ans. SJ 18 n.11). The court also notes that it is undisputed that Smith did not simply give away the money to her brother without any expected return. Smith admits that, at least in part, she "agreed to participate in the borrowing because she expected to share in the future profits of the hotel and to receive tax benefits from the project." (R SF Par. 10). The fact that Smith's investment did not turn out as expected does not mean that she does not have to repay the loan she used to fund her investment. Smith also acknowledges that she does "not blame" BOA for the failure of the hotel project. (R SF Par. 12). Thus, the undisputed facts in this case show that the covenant of good faith and fair dealing does not provide a meritorious defense to Smith.

D.  Inducement of Breach of Fiduciary Duty

BOA also contends that there is not sufficient evidence to support a defense based upon an inducement of a breach of a fiduciary duty owed by Kenny to Smith. This defense is deficient at the outset since it was raised by Smith for the first time in response to the instant motion and was not listed as a defense in her answer to the complaint.  Fed. R. Civ. P. 12.  However, even if Smith had properly raised this defense in her pleading, Smith has failed to point to sufficient evidence to support the defense.  Smith argues that BOA knew when it lent the funds to Smith that Kenny was going to use the funds to develop a hotel and that Kenny held Smith's funds as her agent.  Smith argues that Kenny had a fiduciary duty to her and that BOA's acceptance of funds from Kenny as credit towards the debt owed on the Kenny Note induced Kenny to breach his fiduciary duty to Smith.  Smith also speculates regarding an alleged inducement by BOA to get Kenny to breach a fiduciary duty, but Smith fails to point to sufficient evidence that would enable a reasonable trier of fact to agree with that position.  Smith also makes a conclusory reference to collusion between BOA and Kenny, but Smith fails to point to sufficient evidence to support such a conclusion.  (Ans. SJ 14).

As discussed above, Smith's intended use of the funds, whether to give them to her brother, allow her brother to use the funds, or for other purposes, would not

excuse her from liability on the Smith Note.  BOA loaned funds pursuant to the Smith Note to Smith, not Kenny, based upon Smith's promise under the Smith Note to repay the monies, not based upon any promises made by Kenny to repay the loan. Therefore, based on the undisputed facts, Smith cannot prevail on the inducement of a breach of fiduciary duty claim.  Based on the above, BOA's motion for summary judgment is granted.

## CONCLUSION

Based on the foregoing analysis, BOA's motion for summary judgment is granted.   Judgment is entered in favor of BOA, and against Smith in the amount of $3,630,973.77, plus additional prejudgment interest and attorneys' fees.  As to attorneys' fees and prejudgment interest, BOA is given until November 28, 2012, to provide the court BOA's requested amounts and documentary support for such amounts.  Smith is given until December 6, 2012 to respond.


_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   October 24, 2012